## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ALLANAH TUMURA BENTON,

     Petitioner,          Civil No. 2:16-CV-13648
                           HONORABLE DENISE PAGE HOOD
v.                          CHIEF UNITED STATES DISTRICT JUDGE

SHAWN BREWER,[1]

     Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS*

Allanah Tumura Benton, ("Petitioner"), confined at the Huron Valley Women's Correctional Facility in Ypsilanti, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging her conviction for two counts of first-degree criminal sexual conduct (CSC–I), M.C.L.A. § 750.520b(a)(1), for which she was sentenced to concurrent prison terms of 25 to 38 years. For the reasons that follow, the petition for a writ of habeas corpus is DENIED.

_____

[1]The court amends the caption to reflect the current warden of petitioner's incarceration.

1

# I. Background

Petitioner was convicted following a jury trial in the Genesee County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g. Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant, a former elementary school teacher, was convicted of engaging in sexual intercourse with a 12–year–old former student from her sixth grade class. The victim had academic and behavioral problems and was suspended from school for fighting with another student at the beginning of the 2007–2008 school year. Defendant intervened on the victim's behalf and persuaded the school principal not to expel the victim from school. After the victim returned to school, defendant invited him to religious activities at her masjid (mosque) and to her home, purportedly to offer him guidance and help him with his anger and academic problems. The victim was subsequently expelled from school after a second fighting incident. After his expulsion, he spent more time with defendant at her home, with his mother's permission.
>
> According to the victim, he and defendant progressed from hugging, to holding hands, to kissing, before eventually engaging in sexual intercourse. The victim testified that he and defendant had sexual intercourse on two different evenings in October 2007. After the second incident, the victim called defendant from his home and inadvertently recorded the call. During the recorded call, the victim referred to defendant as his girlfriend and stated that he was proud to be involved with a grown woman. The victim's mother heard the recording and reported it to the school. The school board later terminated defendant from her teaching position and that decision was upheld by the tenure commission.

*People v. Benton*, 294 Mich. App. 191, 194–95, 817 N.W.2d 599, 602–03 (2011).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 491 Mich. 917, 813 N.W.2d 286 (2012).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The prosecution deliberately elicited statements from complainant that portrayed him as sexually naive knowing he told a forensic interviewer of previous sexual partners. Those prior inconsistent statements were not given to the jury and the Court denied defendant her right of confrontation and right to present a defense. US Const., Amends VI, XIV; Mich Const, Art. 1, § 20.

II. The trial court improperly admitted misleading and unduly prejudicial testimony of a finding made at a teacher tenure hearing that complainant's claims were not mere allegations. In addition, the rules on hearsay were violated. Only if this Court deems it necessary does defendant further make an ineffective assistance claim.

III. The mandatory 25 year minimum term imposed under MCL 750.520b(2)(b) constitutes cruel or unusual punishment in violation of the Michigan and Federal Constitutions as applied to the facts of this case.

IV. Defense counsel told Benton that, if she accepted the prosecution's plea offer of one year in jail, her parental rights would necessarily be terminated. This was not true. Due process applies to petitions to terminate parental rights. Said error caused Benton to reject said offer and denied Benton her right to effective assistance of counsel under *Lafler v Cooper*.

3

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), imposes the following standard of

review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim–
>
>> (1)    resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> (2)    resulted in a decision that was based on an
>> unreasonable determination of the facts in light of
>> the evidence presented in the State court
>> proceeding.

A decision of a state court is "contrary to" clearly established federal

law if the state court arrives at a conclusion opposite to that reached by

the Supreme Court on a question of law or if the state court decides a

case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

An "unreasonable application" occurs when "a state court decision

unreasonably applies the law of [the Supreme Court] to the facts of a

prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.  A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

### III.  Discussion

### A.  The Confrontation Clause violation.

Petitioner alleges that she was denied due process under the

Confrontation Clause when the prosecutor deliberately elicited statements from the complainant, portraying him as sexually naive, when earlier inconsistent statements made by the complainant were not given to the jury. Petitioner also claims that she was denied her right to cross-examine the complainant in connection with those statements. Petitioner refers to an earlier forensic interview in which the complainant related prior sexual experiences with a 13–year–old girl and a 14–year–old girl. At trial, when describing the two acts of intercourse with petitioner, the complainant testified that petitioner placed a condom on his penis and inserted the complainant's penis into her vagina because he did not know how to do so. The trial judge denied petitioner's request to cross-examine the complainant concerning statements he previously made during a forensic interview in which he mentioned these prior sexual experiences with the two young girls. The judge ruled that the evidence was barred by the rape-shield statute, M.C.L.A. § 750.520j.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he or she also has the right to present his or her own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington*

6

*v. Texas*, 388 U.S. 14, 19 (1967); *see also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'") (internal citations omitted).  However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996).  The Supreme Court has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane v. Kentucky,* 476 U.S. at 689.  The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)).  Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect.  Instead, a habeas petitioner must show that the state trial

court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F.3d 507, 511-12 (6th Cir. 2003).

The Supreme Court has noted that the legitimate state interests behind a rape-shield statute include giving a rape victim a heightened protection against surprise, harassment, and unnecessary invasions of privacy and may allow the exclusion of relevant evidence if the state's interests in excluding the evidence outweigh the defendant's interests in having the evidence admitted. *Michigan v. Lucas*, 500 U.S. 145, 152-53 (1991).

Michigan's rape-shield statute, M.C.L.A. § 750.520j(1), states the following:

> (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted ... unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

> (a) Evidence of the victim's past sexual conduct with the actor.

> (b) Evidence of specific instances of sexual activating showing the source or origin of semen, pregnancy, or disease.

> (2) If the defendant proposes to offer evidence described in

subsection (1)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). If new information is discovered during the course of the trial that may make the evidence described in subsection (1)(a) or (b) admissible, the judge may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1).

The Michigan Court of Appeals initially found that the evidence of the victim's prior sexual experiences did not fit within one of the categories listed in the rape shield statute. *People v. Benton*, 294 Mich. App. at 197. The Michigan Court of Appeals agreed that although not admissible under one of the statutory exceptions of the rape-shield law, evidence of a victim's prior sexual conduct may be admissible to preserve a criminal defendant's Sixth Amendment right of confrontation. The Michigan Court of Appeals noted that such evidence could be admissible to show the complaining witness' bias, a complainant's ulterior motive for making a false charge, and to show that the complainant had made false accusations of rape in the past. *Id.* (citing *People v. Hackett*, 421 Mich. 338, 344, 348-49, 365 N.W.2d 120 (1984)). The Michigan Court of Appeals further noted: "When a trial court exercises its discretion to determine whether evidence of a complainant's sexual conduct not within

the statutory exceptions should be admitted, the court 'should be mindful of the significant legislative purposes underlying the rape-shield statute and should always favor exclusion of evidence of a complainant's sexual conduct where its exclusion would not unconstitutionally abridge the defendant's right to confrontation.'" *Id.* at 197-98 (quoting *Hackett,* 421 Mich. at 349).

The Michigan Court of Appeals concluded that the exclusion of this evidence did not deny petitioner his right to confrontation or to a fair trial:

> Defendant argues that she should have been permitted to cross-examine the victim concerning his prior sexual experiences because his trial testimony falsely portrayed him as a sexually innocent, inexperienced virgin, thereby appealing to the jury's sympathy for a sexually uninitiated victim. We conclude that the trial court did not err by excluding this evidence. The first flaw in defendant's argument is that the victim never stated, directly or indirectly, that his sexual contact with defendant was his first sexual experience. Indeed, when the prosecutor asked the victim why he needed defendant's assistance with the condom and with penetration the second time, the victim stated, "Cause *every time* I did ... the *girl* put my penis in her vagina for me." (Emphasis added.) We disagree with defendant's contention that this statement could only be understood as referring to the victim's first sexual encounter with defendant. The phrase "every time" refers to more than one occasion, not a single prior incident. Further, the victim's reference to "the girl" suggested someone other than defendant, considering that defendant was a grown woman and that the victim referred to defendant as "Miss Allanah" throughout his testimony. Accordingly, defendant failed to show that the proffered evidence was necessary to impeach the victim's trial testimony.

10

*People v. Benton*, 294 Mich. App. at 198.

The Michigan Court of Appeals further concluded that the evidence was not relevant:

> The premise of defendant's argument is that a jury would view sexual relations with a 12–year–old virgin as being more egregious than sexual relations with a 12–year–old victim who has already had sexual relations, so it was necessary to place the victim's prior sexual experiences before the jury to defuse the prejudicial inference that defendant was the victim's first sexual partner. But the victim's sexual experience or history was not legally relevant to any issue in the case. Sexual penetration with a person under 13 years of age constitutes CSC–I irrespective of the victim's consent or experience. MCL 750.520b(1)(a).

> *People v. Benton*, 294 Mich. App. at 199.

Petitioner is not entitled to habeas relief, because the state courts did not unreasonably apply Supreme Court precedent "by determining that the interests served by the rape shield statute substantially outweighed petitioner's interest in eliciting testimony that may have undermined...the victim's credibility." *Fuller v. Lafler*, 826 F. Supp. 2d 1040, 1057 (E.D. Mich. 2011), *aff'd sub nom. Fuller v. Woods*, 528 F. App'x 566 (6th Cir. 2013).

While petitioner submits that she should have been permitted to cross-examine the complainant concerning his prior sexual experiences, because the trial testimony portrayed him as a sexually innocent,

inexperienced virgin, the record reflects that the complainant never claimed to be an inexperienced virgin. When the prosecutor asked the witness why he needed petitioner's assistance with the condom and penetration, the complainant replied. "Cause *every time* I did...the *girl* put my penis in her vagina for me." Cross-examination in connection with the complainant's prior sexual encounters would not have impeached his credibility because the complainant testified he had prior sexual experiences with other girls. The testimony provided by the complainant indicates that he was not sexually inexperienced.

Furthermore, the complainant's sexual experience was not legally relevant because sexual penetration with a person under the age of 13 constitutes CSC I, regardless of the victim's consent or experience. M.C.L.A. 750.520b(1)(a). Plaintiff is not entitled to relief on her first claim.

### B. Claim # 2. The admission of extraneous evidence.

Petitioner claims that the trial court allowed misleading and prejudicial hearsay statements, in the form of findings made by the teacher tenure commission, into evidence at petitioner's trial.

The Supreme Court has held that "'federal habeas corpus review does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)(quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Williams v. White*, 183 F.

Supp. 2d 969, 977 (E.D. Mich. 2002). The Sixth Circuit has held that "[i]n a federal habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law." *Long v. Smith*, 663 F.2d 18, 23 (6th Cir. 1981). Thus, "[E]rrors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

Any claim that the trial court judge allowed misleading and prejudicial hearsay statements into evidence is non-cognizable on habeas review. *See e.g. Jackson v. Howes,* No. 2011 WL 1118682, * 2-3 (W.D. Mich. March 25, 2011).

Furthermore, the Michigan Court of Appeals reasonably found that trial counsel opened the door to this line of questioning. Petitioner testified on direct examination that the victim's mother brought the recording of the phone call between the victim and petitioner to school, for school authorities to listen to it, but did not give petitioner the opportunity to listen to the recording that day. Petitioner further testified that she was given an opportunity to listen to the recording in April of 2009, by counsel at the tenure hearing and that the school district terminated her employment "[a]s

13

a result of the allegations." (T. 12/17/2009, p. 2012).

During cross examination, the prosecution cross-examined

petitioner, placing the following testimony before the jury:

Q   Ms. Benton , you--you have lost your job, that's true, isn't?

A  Correct.

Q   They had a tenure hearing about that, didn't they?

A   Yes.

Q  So, you had a hearing before you lost your job, didn't you?

A   Yes .

Q   Wasn't just the allegation. There was actually some
process--

MR. CRONKRIGHT : Objection. Approach, Your Honor.

MR. TESNER : Judge, he asked the question .
*************************************************************************
THE COURT: Well, you opened the door, so--

MR. CRONKRIGHT: I understand.

THE COURT:  --he can--so he can go there.
But I think you'd better be real careful how you walk through it.

MR. TESNER: That was my last question about it .

THE COURT: Fine.

(*Id.* at 2014-15).

After reviewing the testimony produced at trial, the Michigan Court of

Appeals found that petitioner's testimony opened the door for the

prosecutor to further question petitioner as to the circumstances of her job

termination.  Petitioner submitted that her employment was terminated

based on "allegations."  The questions posed during cross-examination

clarified that petitioner's employment was not terminated merely because

of "allegations," but occurred after she was afforded a hearing before

losing her job. *People v. Benton*, 294 Mich. App. at 200-01.

Furthermore, petitioner's claim that she was denied a fair trial by the

admission of irrelevant and highly prejudicial evidence cannot form the

basis for habeas relief, because it involves a state law evidentiary issue.

*See Hall v. Vasbinder*, 551 F. Supp. 2d 652, 676 (E.D. Mich. 2008); *rev'd*

*on other grds* 563 F.3d 222 (6th Cir. 2009); *see also Oliphant v. Koehler*,

451 F. Supp. 1305, 1308 (W.D. Mich. 1978).

Petitioner's claim that this evidence should have been excluded

under M.R.E. 403 for being more prejudicial than probative also does not

entitle petitioner to habeas relief.  The Sixth Circuit observed that "[t]he

Supreme Court has never held (except perhaps within the capital

sentencing context) that a state trial court's admission of *relevant*

evidence, no matter how prejudicial, amounted to a violation of due process." *Blackmon v. Booker*, 696 F.3d 536, 551 (6th Cir. 2012) (emphasis original).

Petitioner further submits that trial counsel was ineffective by opening the door to this line of questioning.

To show that he or she was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

On habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably

17

determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Finally, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 563 U.S. 170, 196 (2011).

The Michigan Court of Appeals found that trial counsel's line of questioning intended to show that petitioner was treated unfairly by the school board by not providing her an opportunity to explain her statements on the recording. Defense counsel's strategic decision to elicit this line of questioning in an attempt to show that petitioner was treated unfairly by the school board does not constitute ineffective assistance of counsel,

even if it "opened the door" to damaging evidence.

Moreover, any deficiency by counsel in opening the door concerning the details of petitioner's job termination did not prejudice petitioner, so as to support an ineffective assistance of counsel claim, in light of the fact that this evidence was neither the strongest evidence nor the only evidence of petitioner's guilt to the charged offenses. *See Bridges v. Cason,* 198 F. App'x 491, 494-95; *see also Salem v. Yukins,* 414 F. Supp. 2d 687, 699 (E.D. Mich. 2006)(defense counsel's opening the door to questions regarding the habeas petitioner's prior drug conviction did not prejudice petitioner, in light of the overwhelming evidence of her guilt). The complainant testified regarding the incidents underlying petitioner's conviction. The trial court had also permitted evidence pertaining to the taped conversation between the victim and petitioner. "[*S]trickland* acknowledges that conclusions supported by other properly admitted evidence may be unaffected by the introduction of evidence that, although improperly admitted, is cumulative." *Bridges,* 198 F. App'x at 495. Because the details concerning the termination of petitioner's employment following a hearing before the tenure commission were merely cumulative of properly admissible evidence on this subject, petitioner was not

19

prejudiced by the fact that counsel opened the door to testimony about these details.  Petitioner is not entitled to habeas relief on her second claim.

## C.  Claim # 3.  The sentencing claim.

Petitioner alleges that the mandatory minimum twenty five year sentence that she received on each count of first-degree criminal sexual conduct constitutes cruel and unusual punishment.

A habeas petitioner who seeks to challenge the severity of a prison sentence on Eight Amendment grounds faces a formidable challenge.  He or she may obtain relief only by demonstrating that a state court decision contravened or misapplied "clearly established" Supreme Court precedent. However, the Supreme Court admitted "that our precedents in this area have not been a model of clarity." *Lockyer v. Andrade,* 538 U.S. 63, 72 (2003).  "Indeed, in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow." *Id.*  Thus, the Supreme Court acknowledged that the general applicability of the proportionality standard to term-of-years sentences was clearly established, but confessed a lack of clarity as to the factors lower courts should consider in making that

determination. *Id.* The Supreme Court concluded that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Id.*

In *Lockyer,* the Supreme Court reversed the Ninth Circuit's grant of a writ of habeas corpus on the ground that two twenty-five-year-to-life sentences imposed under California's "three strikes" law, where the triggering felony was the theft of $ 150 worth of video tapes, violated the Cruel and Unusual Punishment Clause of the Eighth Amendment. The Supreme Court noted that the "thicket" created by its jurisprudence consisted primarily of its decisions in *Solem v. Helm,* 463 US. 277 (1983), *Harmelin v. Michigan*, 501 U.S. 957 (1991), and *Rummel v. Estelle*, 445 U.S. 263 (1980). The California state court observed that the proportionality rule set forth in *Solem* was cast into doubt by *Harmelin,* and proceeded to analyze Andrade's sentence under the approach taken in *Rummel,* where the Supreme Court rejected a claim that a life sentence imposed under Texas' recidivist statute was grossly disproportionate to the theft felonies that formed the predicate for the sentence. The California

court concluded that Andrade's sentence was not disproportionate. The Supreme Court held that this decision was not contrary to or an objectively unreasonable application of federal law that was clearly established by the Supreme Court. *Lockyer,* 538 U.S. at 72-77.

A plurality of the Supreme Court held that the Eighth Amendment does not require strict proportionality between the crime and sentence. *Harmelin,* 501 U.S. at 965. As the Supreme Court observed in *Lockyer,* it is generally recognized after *Harmelin* that the Cruel and Unusual Punishment Clause of the Eighth Amendment forbids only an extreme disparity between crime and sentence, that is, sentences that are "grossly disproportionate" to the crime. *Id.* at 1001 (Kennedy, J., concurring); *Coleman v. Mitchell,* 268 F.3d 417, 453 (6th Cir. 2001)(citing *Coker v. Georgia,* 433 U.S. 584, 592 (1977)); *United States v. Hopper,* 941 F.2d 419, 422 (6th Cir. 1991)).

"Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel,* 445 U.S. at 272. Rummel was convicted of obtaining $ 120.75 by false pretenses, a crime punishable by at least two years, but not more than ten years in prison. He was sentenced as a recidivist to life

imprisonment with the possibility of parole. His two prior felonies consisted of fraudulent use of a credit card to obtain $ 80 worth of goods and services, a felony punishable by two to ten years in prison; and passing a forged check for $ 28.36, a crime punishable by two to five years in prison. The Supreme Court held that Rummel's life sentence under the state recidivist statute did not constitute cruel and unusual punishment. In *Harmelin,* the Supreme Court upheld a life sentence without the possibility of parole for possession of more than 650 grams of cocaine for an offender with no prior felony convictions.

The Supreme Court overturned a life sentence in *Solem* on the ground that it was significantly disproportionate to Helm's crime and therefore prohibited by the Eighth Amendment. However, Helm had been sentenced to life imprisonment *without* the possibility of parole for uttering a "no account" check for $ 100, and his prior felonies also were minor, nonviolent crimes. By contrast, the Supreme Court reaffirmed *Rummel* and found constitutionally sufficient a sentence of twenty-five years to life imposed upon a fifth felony conviction. *Ewing v. California,* 538 U.S. 11, 24-31 (2003).

In the present case, petitioner's sentence fell within the maximum

sentence set by state law, and "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek,* 65 F.3d 60, 62 (6th Cir. 1995)(citation omitted)(quoted with approval in *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000). "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'" *Austin,* 213 F.3d at 301 (quoting *Williams v. New York,* 337 U.S. 241, 245 (1949)).

In light of "the vagueness of the gross-disproportionality principle and the admonition that the principle is "applicable only in the 'exceedingly rare' and 'extreme' case," this Court concludes that the state courts did not unreasonably apply clearly established law in rejecting petitioner's proportionality claim. See *Smith v. Howerton*, 509 F. App'x 476, 484 (6th Cir. 2012)(internal quotations omitted).

Petitioner's minimum sentence of twenty five years on each charge of  Criminal Sexual Conduct, first degree (CSC 1) was not disproportionate to the offense or to the offender.  The fact that Michigan's statute for Criminal Sexual Conduct, first degree, calls for a mandatory minimum

sentence of 25 years does not alter the Court's analysis of petitioner's claim. "*Harmelin* squarely establishes that the mandatory nature of a non-capital penalty is irrelevant for proportionality purposes." See *U.S. v. Farley*, 607 F.3d 1294, 1343 (11th Cir. 2010)(holding that thirty-year mandatory minimum sentence imposed on adult defendant for violating statute prohibiting crossing a state line to engage in sexual activity with a child under age 12 was not constitutionally disproportionate in violation of the Eighth Amendment); *see also Stadler v. Curtin*, 682 F. Supp. 2d 807, 829-30 (E.D. Mich. 2010)(State court's determination that sentence of twenty-five to forty years for first degree criminal sexual conduct was not disproportionate, and thus did not violate petitioner's Eighth Amendment rights, was not contrary to, and did not involve unreasonable application of, clearly established federal law and thus did not warrant federal habeas relief, where sentence fell within statutory limits); *U.S. v. Brown*, 443 F. App'x 956, 960 (6th Cir. 2011)(mandatory prison sentences not cruel and unusual punishment). The Supreme Court in *Harmelin* upheld a mandatory nonparolable life sentence for the offense of possession of over 650 grams of cocaine. *Harmelin* thus "precludes the conclusion that [petitioner's] much shorter mandatory minimum sentence" was "cruel and

unusual." *U.S. v. Blewett,* 746 F.3d 647, 660 (6th Cir. 2013).  Petitioner is

not entitled to relief on her third claim.

### D.  The rejection of a plea offer based on misinformation provided by trial counsel.

Petitioner alleges that she was denied the effective assistance of

counsel because she rejected a plea offer when trial counsel told her that

by accepting a plea offer of one year in jail, her parental rights would

necessarily be terminated.

Respondent submits that this claim is procedurally defaulted, having

been raised for the first time in petitioner's motion for relief from judgment.

The Sixth Amendment right to counsel extends to the plea

bargaining process. *Lafler v. Cooper,* 566 U.S. 156, 163 (2012); *Missouri

v. Frye,* 566 U.S. 134, 143-44 (2012).  A criminal defendant during plea

negotiations is "entitled to the effective assistance of competent counsel."

*Lafler,* 566 U.S. at 162 (quoting *McMann v. Richardson*, 397 U.S. 759, 771

(1970)).  In the context of an ineffective assistance of counsel claim

involving a defendant having rejected a plea offer from the prosecution, in

order to establish that he or she was prejudiced by counsel's alleged

deficiency, the defendant must show that but for the ineffective advice of

counsel there is a reasonable probability that the plea offer would have been presented to the court, i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances. The defendant must also show that the court would have accepted its terms, and that the conviction or sentence, or both, would have been less severe than under the judgment and sentence that in fact were imposed. *Id.,* at 164.

There are several problems with petitioner's claim.

First, petitioner failed to present clear and convincing evidence that the prosecutor ever offered petitioner a plea bargain of one year in the county jail. In light of the fact that there is no evidence that the prosecutor ever offered petitioner this plea bargain, petitioner is unable to establish that trial counsel was ineffective for failing to properly advise petitioner regarding a non-existent plea offer. *See e.g. Guerrero v. U.S.,* 383 F.3d 409, 419 (6th Cir. 2004).

Secondly, petitioner continued to assert her innocence throughout the trial and at sentencing.

In the context of an ineffective assistance of counsel claim involving a defendant having rejected a plea offer from the prosecution, in order to

establish that he or she was prejudiced by counsel's alleged deficiency, the defendant must show that but for the ineffective advice of counsel there is a reasonable probability that defendant would have accepted the plea. *Lafler v. Cooper*, 566 U.S. at 164. A court, in determining the remedy for the ineffective assistance of counsel relating to a defendant's rejection of a plea offer, may take account of a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her action. *Id.* at 171.

The Supreme Court has indicated that "Although a defendant's proclamation of innocence does not relieve counsel of his normal responsibilities under *Strickland*, it may affect the advice counsel gives[,]" with respect to the plea bargaining process. *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013). Because there is no indication that petitioner would have been willing to make out a factual basis of guilt, petitioner failed to show that the plea would have been accepted and thus failed to show that she was prejudiced by counsel's alleged deficiencies with respect to the alleged plea offer, so as to establish that she was denied the effective assistance of counsel. *See e.g. Jackson v. United States*, 101 F. App'x 583, 586 (6th Cir. 2004)(defendant failed to prove prejudice required to establish a

28

denial of effective assistance in his counsel's alleged failure to communicate a plea offer from the government, where after the trial, defendant's attorney suggested that he should accept responsibility for a small amount of cocaine so that the defendant could potentially could receive a lesser sentence, but the defendant nevertheless steadfastly refused to admit his guilt).

Petitioner's claim that counsel was ineffective in failing to adequately advise her about the plea bargain is also suspect, in light of the fact that she did not raise this claim on her appeal of right, but raised it only for the first time in her post-conviction motion for relief from judgment. *See e.g. Torres v. MacLaren*, 184 F. Supp. 3d 587, 594 (E.D. Mich. 2016), *rev'd on other grds sub nom. Torres v. Bauman*, 677 F. App'x 300 (6th Cir. 2017)(petitioner's affidavit that trial counsel was ineffective in advising him to reject plea offer not credible where petitioner did not raise this claim on his direct appeal and did not explain why he did not attempt to raise the claim in his *pro per* application for leave to appeal to the Michigan Supreme Court after his appellate counsel failed to raise the claim before the Michigan Court of Appeals); *Paez-Ortiz v. United States*, 200 F. App'x 946, 948 (11th Cir. 2006)(Any deficiency in failure of criminal defendant's

counsel to advise defendant to plead guilty did not prejudice defendant
and did not amount to ineffective assistance, absent any evidence that
plea offer was made to defendant or that defendant ever expressed desire
or intent to plead guilty, where record indicated that defendant was aware
of his option to plead guilty and of consequences of guilty plea at
sentencing, and maintained his innocence throughout sentencing and on
direct appeal); *United States v. Avalos Banderas*, 894 F. Supp. 2d 1169,
1176 (D. Neb. 2012), *aff'd sub nom. United States v. Banderas*, 858 F.3d
1147 (8th Cir. 2017)(no reason to believe that the defendant would have
accepted a guilty plea, so as to support his ineffective assistance of
counsel claim, where up until the filing of the 2255 motion to vacate
sentence, the defendant "consistently maintained his innocence and
directed his lawyers to proceed accordingly throughout the criminal case
and on appeal").

    The record is void of any specifics pertaining to a plea offer made by
the prosecution or any indication that petitioner would consider a plea.  To
the contrary, petitioner consistently maintained her innocence throughout
the proceedings.  Petitioner submitted an affidavit from a friend and from

herself, however, no mention of such a plea can be found prior to petitioner's trial.

The trial court judge in rejecting petitioner's claim found inconsistencies between her affidavit and the affidavit of her friend pertaining to when the prosecutor offered the plea.  Based on petitioner's affidavit, she was offered a plea on the first day of her trial.  Based on her friend's affidavit, petitioner was offered a plea on the eve of her trial.  The trial court record also indicates that at the November 30, 2009 pre-trial hearing, the court asked the assistant prosecutor "what the best offer was" and the assistant prosecutor replied, "There's an unofficial offer out there that is being considered...It is not official until we know there is definite consideration." (T. 11/30/2009, p. 3).  Petitioner's jury trial began on December 2, 2009, without any mention on the record about any plea negotiations.  There are no terms in the record as to the alleged offer.

In rejecting petitioner's claim, the trial court found that due to lack of any information pertaining to the plea, the Court "could not conceive of an appropriate remedy given the lack of an official plea offer or any specific plea terms."  *People v. Benton*, No. 09-24636-FC, at * 5 (Genesee Cir. Ct. April 13, 2015).  Petitioner has failed to show that trial counsel was

ineffective by failing to communicate a plea offer, due to the lack of any specific information contained in the record pertaining to the offer of a plea. Petitioner has also consistently maintained her innocence throughout the proceedings, which would indicate that she would not have accepted a plea. Furthermore, without any information pertaining to a plea offer, petitioner cannot demonstrate that the trial court would have accepted the plea. Petitioner is not entitled to relief on her fourth claim.

## IV. Conclusion

The Court will deny the petition for a writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.[2] 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that

---

[2] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254; *see also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

This Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. *See Slack v. McDaniel*, 529 U.S. at 484.

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v. Youngblood*, 116 F.3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous;

therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *Id.*


# V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** That a certificate of appealability is **DENIED.**

**IT IS FURTHER ORDERED** that petitioner will be granted leave to appeal *in forma pauperis.*

<u>**S/Denise Page Hood**</u>
**Denise Page Hood**
**Chief Judge, United States District Court**

**Dated: June 29, 2018**

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 29, 2018, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager